**Scott McFARLANE, Petitioner,**

v.

**Colonel Guy DeYOUNG, Commanding Officer, United States Army, Presidio, San Francisco, California, Respondent.**

**No. C–70–116.**

United States District Court,
N. D. California.

Feb. 20, 1970.

Young & Nareau, Woodland, Cal., for petitioner.

James L. Browning, Jr., U. S. Atty., Steven Kazan, Asst. U. S. Atty., San Francisco, Cal., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GERALD S. LEVIN, District Judge.

This action involves the obligation of petitioner as a soldier in the United States Army to seek clarification of his orders to report for duty when such orders do not include a specific time for reporting. The extent of that obligation determines whether or not petitioner must serve additional time in the Army in order to fulfill his initial two-year commitment as required by 50 U.S.C. App. § 454(b).

Petitioner was inducted into the Army on September 6, 1967. On February 27, 1968, petitioner was ordered to report to Fort Lewis, Washington, on April 1, 1968, for shipment to Viet Nam. On or about March 1, 1968, petitioner was given 30-day leave prior to his having to report to Fort Lewis. On or about March 24, 1968, petitioner underwent an emergency appendectomy at Yolo General Hospital in California.

At that time petitioner contacted Fort Lewis and was told to remain at his home in Woodland, California, and await further orders for assignment. On March 28, 1968, petitioner contacted Fort Lewis by letter, informing military authorities there of his address and requesting that any further orders be sent to him at said address.

On May 18, 1968, petitioner was contacted by military authorities at Fort Ord, California, but no further orders resulted from such conversation and the authorities at Fort Ord did not follow up on the matter.[1]

Petitioner alleges that his next contact with the Army occurred in April of 1968,[2] when he accompanied a friend to the United States Army Personnel Station in Oakland, California. Although the exact circumstances of this occasion are not clear from petitioner's statement, it appears as though he circumspectly inquired about his status and was told to stay home awaiting further orders.[3]

Petitioner had no further contact with the Army until June 19, 1969, when he appeared before Local Board No. 20 pursuant to a letter from that Board requesting that he report there.[4] Little seems to have come from this appearance, and petitioner was not given any further orders.

On September 4, 1969, petitioner appeared at the Presidio of San Francisco to inquire about a discharge. In accordance with applicable regulations, an investigation of petitioner was conducted, and the Investigating Officer concluded that petitioner be held accountable for his absence from duty. The Investigating Officer's report was forwarded to the Department of the Army, and the Adjutant General determined that peti-

1. Following emergency hospitalization such as petitioner underwent, the Army's normal procedure requires that the individual be attached to the nearest installation hospital, in this case the hospital at Fort Ord. Fort Lewis would be required to notify the Surgeon's Office at Sixth United States Army Headquarters of the problem. This may account for the telephone call to petitioner from Fort Ord on May 18, 1968, although the Registrar for the United States Army Hospital at Fort Ord apparently does not have any record concerning petitioner.

2. Petitioner does not indicate whether this contact occurred in April of 1968 or 1969. While it is not clear, it appears from the context of petitioner's statement that the contact occurred in 1968.

3. Petitioner's statement reads as follows:
   During April a friend of mine was getting a discharge from Oakland. I took him down. While I was there, I used my ID card to buy military supplies at the PX. No one said anything. I went to the discharge area with my friend and asked them if I was told to await further orders and I did [sic] what would the Army do. They soad [sic] to stay home & wait until I received them.

4. Local Board No. 20 requested petitioner's appearance as a result of information brought to the attention of the Board by a third party.

tioner had been absent without authority since June 1, 1968.

50 U.S.C. App. § 454(b) is to be read in connection with 10 U.S.C. § 972 and the applicable Army regulations issued thereunder, which provide that a member of the armed forces who is absent without proper authority is liable to serve for a period which, when added to the period he served before his absence from duty, amounts to the term for which he enlisted or was inducted. In re Pride, No. 51512 (N.D.Cal. Aug. 6, 1969).

In this situation, the scope and extent of petitioner's obligation is to be determined against the standard recently enunciated by the Ninth Circuit Court in Beaty v. Kenan, 420 F.2d 55, (9th Cir. 1969). The court in *Beaty* concluded that a soldier in petitioner's position has a continuing duty of attempting in good faith to ascertain what his military orders are. In granting Beaty the relief he sought, the court found that he had in fact satisfied that duty. Specifically, Beaty had made two efforts to ascertain when he should report, *before* the expiration of the 60 day leave granted him. His first contact was with a recruiting sergeant, who told him to stay home awaiting further orders, and the second contact came via his parents contacting the Army's Classification and Assignment Center in Washington, D. C., where they were informed again that Beaty should await further orders. Finally, over a year later, and five weeks after his original termination date, Beaty appeared at Fort Ord and requested his discharge.

Although there is some superficial similarity between the facts of *Beaty* and the instant case, I find that petitioner has not satisfied his "continuing duty."

By petitioner's own statement, he had no contact whatsoever with the Army from the period of April, 1968, to June 19, 1969, when he reported to his Local Board. A review of the record indicates that petitioner did absolutely nothing during that period to contact military authorities or to ascertain the extent of his obligation. Petitioner was not disabled, and was in fact gainfully employed. He certainly should have known, if indeed he did not, that something was wrong and that it was incumbent upon him to contact military authorities somewhere, which he could easily have done.

Furthermore, except for petitioner's inconclusive contact with some unnamed personnel of the Army in April of 1968, the only other contact he had with the Army was at the behest of his Local Board, rather than on his own initiative. A recounting of that appearance also fails to substantiate petitioner's contention that he attemped in good faith to ascertain the extent of his obligations. Rather, all of petitioner's actions seem to have been calculated to making himself scarce. Unlike Beaty, petitioner "sat at home and [did] nothing to ascertain when the Army wanted him," and he did not attempt "to convince its representative something was wrong."

Finally, I note that petitioner appeared at the Presidio requesting a discharge only some two days before his original termination date, a fact making his actions considerably more suspect than those of Beaty, who did not appear in order to request a discharge until some five weeks after his original termination date.

Accordingly, respondent is entitled to require petitioner to serve for a period which, when added to the period served before said absence, amounts to the term for which he was inducted.

The petition for a writ of habeas corpus, therefore, should be and is hereby denied.

It is so ordered.